The next case on our docket this morning is Tucker v. Faith Bible Chapel, and we'll hear first from Appellant's Counselor. But if you give me just one moment. Okay, Judge Bell, are you ready? I am. Okay, we'll hear from Appellant. May it please the Court, Daniel Blomberg for Appellant, Faith Bible Chapel. I plan to reserve three minutes for rebuttal. This appeal concerns core First Amendment principles, ensuring the state does not interfere in a church's choice of its ministers or its religious beliefs. Mr. Tucker was entrusted with nurturing Faith Bible students in the Christian faith. He admits that he held himself out to those students as their chaplain, as focused on their spiritual well-being, as planning weekly chapel services to foster their spiritual growth, as ensuring those chapel services pointed them to the Christian gospel. Under the First Amendment, he cannot now entangle courts in his employment dispute with Faith Bible, particularly not a dispute arising from a chapel services message. Well, he also said to me that he did not teach religion, that he taught history and other matters, and he said the religion was taught in the fact that it had context to what I was teaching, but he specifically also said I did not teach faith to these children. No, Your Honor, he admitted under oath and in his affidavit that he taught in the Bible department, and in the Bible department he taught courses on, for instance, Christian leadership, which taught principles from the Christian faith to the students. So just going through some of the allegations that he makes in his briefing that don't show up in his affidavit, in his testimony, for instance, he admits that he held himself out as a chaplain to the students in his class. He admitted that he was, quote, focused on their, quote, spiritual growth and, quote, he admitted that he planned chapels on a weekly basis and that he taught Bible classes, and he admitted, for instance, under oath that he did all of these things. He didn't just hold himself out to students as doing them, but he, in fact, did them. In his affidavit, which is the only testimony that he really, or evidence he really relies on before this court, he never disputed his own testimony that he held himself out to students as their chaplain or as responsible for their spiritual growth and wellness. In fact, he admitted he repeatedly signed contracts identifying his role as faith Bibles chaplain and admitting that he was responsible to plan chapels, to teach classes in the Bible department, to promote Christianity, to encourage students to think through Christianity, and to do all this with the clear expectation that he endorsed Christianity in his duties and teach from a Christian worldview, which the school specifically- His duties changed over time, didn't they? I mean, when he first came in, he wasn't teaching any classes that were in the religious department, and then he became dean of students slash chaplain, and he started teaching some that were, and then he was demoted after this race and faith program, and he was no longer teaching. Do we have to break it out and look at what he was when the employment action was taken? I mean, by the time he was fired, he wasn't in a ministerial position, was he? Yes, Your Honor, he was, and it was a part of the continuation of the same employment dispute, and so you see this, for instance, in the- He wasn't anymore, once he was demoted after the race and faith program, he was no longer teaching what were classified by your client as religious courses anymore. Is that correct? No, Your Honor, that's not correct. He was no longer responsible for the chapel services at that point, so if you look at his testimony, you'll see, let me just pull this up, that he admitted at page 398, appendix 398, that at the time of the race to faith chapel in January 2018, he was a teacher, he was director of student life, he was coached, and he had the role of chapel coordinator, which he also admitted was known as the chaplain, and then he was demoted from what we called the chaplain role. That's his testimony. He was demoted from the chaplain role, which is the role responsible for the chapel services. That's true, that happened in January 2018, he was, his employment ended in February 2018. That's all a part of the same employment dispute that's before this court, and he has not argued to this court that it needs to parse out those sort of issues. He abandoned that position in his responsive briefing. Initial briefing, he had made some points along those lines that were deeply inconsistent with other court cases on this He didn't ever renounce it or give it up. You just simply say that, but you don't abandon something if you make an adequate argument in one brief and then don't follow it up in a reply. You're correct, your honor. He doesn't, he didn't make the argument in his response brief. Right, but, and that's not an abandonment, but the question is really very important in this case. Do, when the question, a timing question, do we look at, when we're looking at this kind of protection for ministerial exception, do we look at that at the time the action was taken against him? Or do we look back at the entire relationship that the person had with the church? Can you be minister for a while, then not a minister, then fired, and still claim the ministerial exception? Or the church, rather, would have to, I mean, would claim, but he opposes it, of course. That timing question is an important one that Judge McHugh raised, and I really, I separated from the facts of this case. I'd like to have you just ask, answer in the abstract. Do the ministerial exception apply specifically to the moment when action was taken against him? Or does it apply at the time that he did things that caused later the action to be taken against him? Your honor, it, the, the, both are, the Our Lady of Guadalupe case and the Hosanna-Tabor case say that you need to take in all relevant facts. The relevant facts would include the course of history of the relationship. I think, you know, you can imagine a situation, for instance, where an individual held a ministerial role, left that ministerial role, and, and spent years on, you know, doing other type of work, being a physics teacher that had no religious component to it whatsoever, and then having an employment dispute. And in that situation, I don't think, I think it would be very hard to see the ministerial exception applying. That's not this on non-religious classes, was in the 2000 to 2006 time frame. That's when he was primarily teaching in the science department. Then he left and became a missionary for four years for Lookout Mountain Church. And then he came back after that four year, reapplied to teach in the Bible department, as well as in other departments. He spent four years teaching as a part-time, you know, part-time teacher in the Bible department. Then in 2014, that's when he for the first time, the position of the director of student life slash chaplain. That's when he became a full-time employee. And he took on 20 to 25 hours a week, focused on students' religious and spiritual development. And then a couple of years later, he became solely responsible for the planning of the chapel services. That happened in 2017. And then as relevant here, the dispute that this whole case arose from occurred in January, 2018, when he was doing all of those things. He was teaching in the Bible department. He was a chaplain. He was a director of student life. He had that leadership role. He had a teaching role. And he had the chaplaincy role that he was holding himself out to students as responsible for their spiritual welfare and well-being. So that's the timeline we're working on. And the dispute that the Our Lady case tells us to look at is that relationship between the minister and his church at the time it arose. I think you've addressed that thoroughly. So I do have one change of subject, unless Judge McHugh wants to follow up on that line. To me, the real question, maybe the most decisive question in this case is you've argued that we ought to analogize the minister exception to qualified immunity. And thereby, you just and only by that reason can you justify an interlocutory appeal. Otherwise, it would simply be a defense that you would deal with after the case is over. So it's that analogy, it seems to me, is core to our ability to have jurisdiction to consider this case. If we accept that and analogize it to qualified immunity, I would think we would say we don't have jurisdiction because the court explicitly said there's good arguments on both sides. I'm not saying who should win or lose, but I'm saying that the facts still need to be developed and there are genuine disputes of fact. If a case came up to us on interlocutory appeal on qualified immunity where the district court said, I am specifically basing my ruling not to give you relief defendants because of a dispute of facts, I think we would say we don't have jurisdiction to consider the matter. So why under your argument that we use the analogy to qualified immunity, should we not conclude that there was no jurisdiction? Yes, thank you, Your Honor. Two issues. One, even under the qualified immunity framework, which doesn't squarely apply here, I agree it's an analogy, it's helpful, it's what this court looked to in Bryce and Skzipchak in saying that the ministerial exception affirmative defense is akin to qualified immunity. Even under that standard, this court still has, its jurisdiction is clear. This is the Dodge case at 967 F3rd at 1058. Its jurisdiction is clear over the legal analysis of the facts that were found and the ultimate resolution of the legal issue that's before this court. And Your Honor, the only specific disputes, which it's the specific disputes that this court has to defer to in terms of evidentiary deficiency, the only specific dispute found by Judge Jackson below was that Tucker's title was either chaplain or director of student life. No, he went further. You look in the evidence of what Tucker testified about, and he did give some statements that helped both sides. But if we took just the statements most favorable to his position, now that he was not serving as a chaplain or minister, what Judge Brooke Jackson said was the main dispute is that his titles suggest that he was a minister, but his actions, his conduct, his actual responsibilities at the moment of the controversy, not before, suggest he might not have been a minister. I can't resolve that. If that came up in an ADA context, I think we would say we do not have interlocutory appeal jurisdiction. And Your Honor, I would just say to that, one, I think that you still have jurisdiction over the legal analysis of the facts. So accepting all of those facts is true. This court in the Dodge case said that its jurisdiction is clear. And I just walked through what I think is a clear articulation of what his testimony is, what the evidentiary record is, and what the affidavit is. And the plaintiff can't rely on his sworn testimony, an affidavit after the fact, to contradict the sworn testimony and the record unless, at a minimum, he provides an explanation of the discrepancies, which that's the Kindred case, a 220 F-3rd, 1224. He didn't provide that explanation. And the Vette case that this court decided just this year, 989 F-3rd at 1164, says that an affidavit can't create a dispute of fact where it directly contradicts her own testimony. And so in this situation, to the extent the court was confused below that Tucker was claiming that he did not have the title of chaplain, that is blatantly contradicted on the record. And the Dodge case says there is no deference that is due in that context in that situation. However, we don't even think that you need to get there because the disputes that the court recognized below aren't material to the fundamental questions of ministerial status. Just recognizing the things that Tucker testified himself as to his status is enough to reach the issue and to resolve it that he is a minister at the time the dispute arose. Finally, Your Honor, this is not a qualified immunity case. This is a First Amendment case. And under the First Amendment cases, the Bose court, the McCraw court, and the United States v. Friday court say that the court has an obligation. It's got to have an analogy to qualified immunity because of the 800-pound gorilla that we are not considering this on the merits at the end of the case. We are considering it on interlocutory appeal. First Amendment comes up all the time in qualified immunity too. So you're saying it's not qualified immunity because it's First Amendment is a non sequitur because qualified immunity cases are often First Amendment cases as well. So we're talking about a procedure, not a merits question. Only can take it if there are no disputed facts and we've got a court that said there are disputes of fact which are material enough that I cannot rule. And if that statement in the district court record came up to us on qualified immunity, I don't believe we would take jurisdiction of it. Your Honor, I would just point this court to its decision in Bryce and Skazipchak that says the ministerial exception requires prevention of adjudication of Title VII cases. But that's not an interlocutory appeal. No, Your Honor, but that's the standard. That's the right. The right here isn't just a right against liability, it's a right against the adjudication. But that's what's being asserted in all qualified immunity cases. We have a right not to even stand trial. And so we say, okay, that's separate from the merits. We'll consider it, but only on very tightly constrained grounds because you could lead us down a rabbit hole that we don't want to go down unless everything is nice and tidy. If it's not nice and tidy, we're not going to go down that rabbit hole. Absolutely, Your Honor. Absolutely, Your Honor. I think you have said nothing here that, I mean, if we gave you all that your brief said, which kept saying we are like qualified immunity, we are like qualified immunity. Unless you're saying somehow that we should create a brand new category of interlocutory appeals that favor a pastor exception above all else, unless you're saying that, but that's not what your brief say. And I think it may be too late for you to be broader than that at this point. Oh, no, Your Honor. And to be very clear, we don't think that this issue is even in dispute between the parties because Mr. Tucker's brief, his leading case is the McClendon case, where then Judge Gorsuch said that courts are, of course, bound to permit immediate appellate review of constitutional rights not to stand trial. The Los Lobos case is the same thing in the statutory context. And then Mr. Tucker, when he was citing to the Herx and McCarthy cases out of the Seventh Circuit, didn't dispute that religious autonomy rights are immediately appealable if the proceedings below require resolution of a religious question. So there's no dispute between the parties on that issue. And the binding precedent here says that resolving a minister's employment dispute is a religious question. That's what the Hosanna Tabor case says at 565 U.S. 195. No, but you haven't pointed to one case that is in this context and says interlocutory appeal is appropriate. No, Your Honor. Your Honor, we have. We have. Actually, it's the Mr. Tucker that hasn't appointed to a single one. To the contrary, the Herx case, the McCarthy case, the Whole Woman's Health case. The McCarthy case, as I recall it, is talking about whether it should have been 12B1 or 12B6. Right. And with Lobos, I mean, the cases that you throw out, there's not a single one of them that's in this context, which is that you do not have. I mean, you have summary judgment cases and you have cases where an issue is about to go to the jury. That's what's happening. That's what's next in this case, Your Honor. We've already done the discovery on the ministerial exception. Ministerial exception is a question of law, isn't it? That's correct, Your Honor. So after summary judgment, the district, I mean, after additional fact finding, the district court's going to have to make a decision on whether it does or doesn't apply. It's not going to be kicked to the jury. Oh, no, no, no, Your Honor. That's exactly the problem that we're here. We've already done discovery. Both sides have already done full discovery on the question of the application of the ministerial exception. The only thing that remains is merits adjudication, merits discovery and trial. That's what the court said was a disputed issue of fact, and that's what's going forward. Your Honor, the court has twice already ordered below, and except for the stay by Judge Timkovich and I, we would already be in through merits discovery and we would be about a month and a half away from trial right now. Yeah, and you're saying I have a right not to go through merits discovery, and I'm saying I don't see a case that says that, and you're arguing treat me like qualified immunity, and Judge Ebel is saying even under qualified immunity, if the district court's decision was based on I can't tell yet based factual disputes, we wouldn't exercise jurisdiction over it. Well, Your Honor, just quickly, I think the court still would exercise jurisdiction if we were in the place that we are here, where we say, except all the fact finding below, we're not disputing that. We're just saying that the record evidence, the full record, which Hosanna Tabor and Our Lady say this court has to review, the full record shows that Mr. Tucker was a minister for Faith Bible Church, but there are of denial for summary judgment and the ministerial exception going to trial, and that was the Daner case, the White case, the Kirby case, the Harris case, all of which are cited in our briefs. All of the experts that have written on this issue all agree that this is a kind of right that can go to on interlocutory appeal, because the only way to protect that... The experts, with all due respect to our former colleague, may make a very good argument for the Supreme Court to adopt a different approach, but we are in a different position than the Supreme Court, and the Supreme Court has told us not to expand the concept of interlocutory appeal, that we're supposed to be looking at it as a very unusual exercise of appellate jurisdiction. And to be clear, Your Honor, this is a very unusual exercise of appellate jurisdiction. There are very few cases that have normally district courts manage the docket in a way that prevents merits adjudication before final resolution, but in such time, when the district court is going to allow the proceedings to get into the merits or to decide a religious question below, then the McCarthy case of the Second Circuit, the whole women's health case of the Fifth Circuit, and a whole raft of case out of state Supreme Courts have all said those are appealable issues that must be resolved before allowing courts to entangle themselves and violate the core principle of separation of church and state that's protected by the religion clause of defenses that are at issue here. I'm staying well over my time, Your Honor, unless there are any other questions. I'll wait. Judge McHugh, do you have any additional questions? No. Judge Abell? No. All right. Thank you, counsel. You're out of time, but I'm going to give you one minute for rebuttal. We'll hear from the appellate. May it please the court. Bradley Gerard for Appellee Gregory Tucker. The threshold question, and in Mr. Tucker's view, the dispositive one, is whether this court has jurisdiction. There can't be jurisdiction over the church autonomy question because it was never properly presented. So I will focus on the ministerial exception. The school asks this court to find that any time a district court denies a ministerial exception defense, whether it's over a religious question or a legal or a factual dispute, the defendant has an immediate appeal as of right. That includes cases like this one where the district court did not even decide the issue. No circuit has gone that far, and this court should not be the first. The school could have sought certification under 1292B. It didn't. It could have sought a writ of mandamus. It didn't do that either. Instead, it does ask for an entirely new category of appeals under Cohen. But the Cohen doctrine must be selective and narrow. New categories should be done by rulemaking, not through a specific case, especially one like this where there are myriad factual disputes. But Judge Jackson only identified one, and your opposing counsel is saying that this is the prototypical qualified immunity issue, much like Lewis versus Fripp, where the court assumes arguendo that the fact should be resolved in favor of the plaintiff. And in this case, the only factual dispute that Judge Jackson identified was whether or not he was a chaplain or director of student life. And he's saying, assuming that he wasn't a chaplain, that he, your opposing counsel is that as a matter of law, he would fit within the ministerial exception. And so if, now, the official question, as Judge Avella identified, is, you know, do we borrow for the first and third prongs of the collateral order doctrine? Do we borrow from the qualified immunity case law? But this is a classic issue of if he is not a chaplain and he would still fit within the ministerial exception, then why wouldn't we have jurisdiction under Cohen? Well, Your Honor, I'll get to, in just a moment, I'll get to why this case is nothing like qualified immunity. And the parallel between the ministerial exception and qualified immunity just can't stand. But to get directly to your question about the factual dispute, two things. First, under Cohen, we don't look at the facts of a specific case. This court has to decide if, as a categorical matter, every time a ministerial exception defense is denied, a defendant has an appeal as of right. And second, we actually disagree on quite a number of the facts. Well, yeah, but that's not how we determine whether or not we have Cohen jurisdiction, qualified immunity. As Judge Avella said, I think we typically will identify the factual disputes that have been set out by the district judge. And the district judge here only identified one. Your Honor, I don't think that's a correct reading of the district court's opinion. What the district court said is, look, we have evidence on both sides. And largely, what we have on the school side are formal documents, including the handbook and the contract. Now, this is what the school said Mr. Tucker did. Now, on the other hand, what we have is Mr. Tucker and all of his evidence that says, no, this is what I actually did. The school might have- Well, let me, I mean, the Supreme Court has said in Our Lady of Guadalupe, we look at what he actually did. And while he may characterize it as, I wasn't a religious leader, I wasn't a minister, he admits he's planning their chapel services, where he admits they pray and they sing religious songs. And he designs programs that are for the purpose of bringing the students in touch with Christianity and to model it in their lives. Right? I mean, that sounds like, I mean, to me, I don't care what he says. If he agrees with those facts, isn't it pretty clear he's a minister? No, Your Honor. I disagree with that. I do want to highlight that this just gets to one of the myriad factual disputes that are here in this case and why this court shouldn't hear this case in the first instance. So Mr. Tucker took over the responsibility for the chapels, right? Just in his fourth year as the director of student life. Now, despite what the opposing says, he did not hold himself out as a chaplain repeatedly. He said, I was the director of student life. If you look at page 77 of his deposition, he said that one time in a single PowerPoint slide, yes, he held himself out as chaplain. Now his duties as the director of student life, including in just the more administrative task of the chapel services, he says, and made clear, I took over these services and I wasn't going to change much about them. He said that the students were the ones who led the prayer. The students were the ones who chose the music. The students chose the theme for the chapels, that he was not the one who was in charge of all of this. What did your previous law firm say to us when you were defending jurisdiction and said that his duties included, quote, organizing religiously oriented discussion groups and quote, provided spiritual guidance and counseling. Now this isn't argument in district court. This is to us. Yes, your honor. So, you know, the, what they said about the providing spiritual guidance as a director of student life. Now, Mr. Tucker showed that that was a very minimal part of his position. Now, Mr. Tucker does not dispute that he had some employees at a Christian school will have some religious responsibilities, but the test under Morrissey Baru and Hosanna Tabor is not, did the person do something religious? The question is, did they play an important spiritual function? Were they important preachers and teachers of the faith? And Mr. Tucker, when to judge Bacarach's question about the organizing, the breakout groups, if you actually look at the evidence and the record, what Mr. Tucker said is, look, I had this groups. There were a number of people who collaboratively chose the themes. And Mr. Tucker even said to the people who actually led the breakout groups, Hey, if you don't want to follow the theme, you can go ahead and do what you want with it. You can go ahead and take it in your own direction. So it's hard to say that he was so responsible for the content and the direction of these breakout groups. When he said in a chain email with a number of people, I'm not going to do much different. Here's some ideas. Here's something we're going to do. And if you want to take it a different way, you go right on ahead. Now, again, I would like to get back to the question of jurisdiction just because the factual disputes here show why there can't be jurisdiction. So I can start off with just the jurisdiction at the high level. This court has never found, other than in one instance, the first amendment right for an interlocutory appeal. That was in case to deal with PHE. This court has said, those were unique circumstances. We're not going to expand that here. So the school doesn't point to any cases in this circuit, and it doesn't point to any cases in any other circuit in which a court has found that a denial of a ministerial exception is appealable as a matter of right. Like I said, the most that the school can do is broadly say that the first amendment issues are immediately appealable, but that's simply not the law. And this court has rejected that time and again. Well, one of the reasons that there's not a lot of case law on this is there's not a lot of case law either way on this issue. Now, what he has said is, well, if you borrow from those cases where the Supreme Court has recognized coin jurisdiction, for example, in the Nixon case with absolute immunity, why did the court recognize interlocutory jurisdiction? Well, in part, because there was a separation of powers component there. And he's saying here, you have a separation of church and state at play here. You have in qualified immunity cases, and in Nixon, you have cases where there is a concern about, or particularly in qualified immunity, about subjecting someone to the Supreme Court. He has cited and quoted a number of circuit court cases that have talked about the dangers of determining whether someone is a minister will entangle the court in deeply held controversies that are religion based. And so it does seem that he has put together a fairly cogent, persuasive argument that though there's not a lot of case law on this subject, that if you look at the reasons that we have collateral order jurisdiction in other cases, they fit like a glove here. What's wrong with it? Your Honor, described at such a high level of generality, that might have a certain sort of logical appeal to it, but you don't have to said, look, this is what we do for new cases under Cohen. Cases fall into two buckets. The first, and this is cases like Nixon, does the right involve a government actor or implicate the functioning of the government? And second, if what we're talking about is litigation between private parties, is there an explicit statutory or constitutional right that by its terms gives an immediate right to an appeal? There's no government actor here. So what we have to do is look to the text of the first amendment. There's nothing in the first amendment that explicitly says this is the right to be free from trial. Now you can compare that to the rights that have been found under Cohen to give immediate interlocutory appeal. The double jeopardy speech and debate clause there, the constitutional set text specifically does say that you have a right to avoid trial. Now, even if an implicit right would be enough, which it is certainly not, the Supreme Court has said the opposite about the ministerial exception. It's an affirmative defense. The right that the ministerial exception gives is the right to choose your clergy. The qualified immunity is an affirmative defense. I didn't get that. Qualified immunity is an affirmative defense too, but qualified immunity is just a completely different animal. And that's for three reasons, your honor. First, it guarantees the effective functioning of the government. So going to the two buckets that this court has highlighted before for types of Cohen cases, it falls into the first one. And perhaps that's why the word immune or immunity doesn't appear a single time in a Hosanna Tibor. And to the extent it appears in Morrissey Peru, it is only to say religious organizations are not immune from general laws. Second, because qualified immunity is so unique, this court, following the Supreme Court's lead, has reason that qualified immunity is the only inexplicit right to not stand trial that's immediately appealable. That language obviously was before anybody considered the religious exception, the ministerial exception. I mean, that was what everybody thought was the law, but now we've got a new pitch coming over the plate and we've got to decide what it looks like. Is it a curveball or a fastball? Well, your honor, this court's cases say, look, if it's not an explicit statutory or constitutional right, then that's it. Because in part, the rules committee is the proper place to go for these sorts of changes. And in the instances in which there might be some sort of serious injustice or difficult question of the law, you can do 1292B. So what was the explicit authority that the courts rely on for interlocutory appeals in qualified immunity? So there is no explicit authority. And as the footnote 2 in McClendon says, and as the Supreme Court said in Mohawk, that's just a different animal. We recognize that. And actually in the majority opinion in McClendon. But it just arises out of Cohen. I mean, the fact is, I mean, if there was an explicit statutory right for it, that'd be one thing. But it just arises out of Cohen analysis, just like is being argued now for qualified for the pastor exception. Well, your honor, I will say that the McClendon opinion in a back and forth with the concurrence said, look, if the Supreme Court's answer in Mohawk that qualified immunity is unique and that it's the only inexplicit right isn't sufficient, if it doesn't really sit well, you got to take that up with the Supreme Court. That's the law. And that's what qualified immunity is unique. Now, the school says that if an inexplicit non-constitutional right is appealable, then surely a constitutional right must be. And that sounds nice on the surface, but that's simply not the law. There are constitutional rights that are plainly not appealable, like the right to a speedy trial. Now, in any event, getting back to something that Judge Ebell mentioned, even if this right were like qualified immunity, which it's not for reasons, that doesn't help the school here. That's because under Cohen step one, even in qualified immunity cases like this, there would be no appeal. So I can turn to the Cohen factors. Now, the first factor. Yeah. Can you just explain that? Yes. And that's the first Cohen factor, your honor, which is whether the issue was conclusively decided. So an issue can't be conclusively decided when the district court says I can't decide the issue. There's a dispute of the word conclusive meaningless. Let me stop you for just a minute. I mean, one of the arguments is that the problem with that is that you're going to move forward in a way that is destructive to the right that the Bible study is trying to protect. That by the very process of proceeding with discovery and God forbid submitting this question to a jury, that you're trouncing all over the rights and you can't repair it after final judgment. Yes, your honor. So first off, just as the Supreme Court and this court have reiterated, starting with digital equipment, the kind of contention that this is an absolute right to be free from these proceedings should be viewed with a skeptical, if not a jaundiced eye, especially in the light of Hosanna, Tabor, and Morsi Berra, which say these are fact intensive legal tests. There has to be some level of discovery. There has to be a back and forth. This is a question about liability. There has been discovery here. On the ministerial exception, the court allowed all the discovery that you wanted. Now, you didn't yet get to discovery on the church exception, but we're not really dealing with that because I don't think that was really preserved anyhow. But on the ministerial exception, nobody says, hey, you shouldn't have ruled because we still have outstanding discovery on that point. No, but the school had a burden. The school had the right to move for summary judgment on the ministerial exception. It didn't meet its burden. The district court said, look, there are disputes of material fact, and just like any other affirmative defense, we move forward with the case. That's precisely what happens with qualified immunity. If we come up with a qualified immunity case where the judge said there's the dispute of fact, but we say, yeah, there are some disputes of fact, but we won't consider them because they are not in dispute, it will give us a legal route of disposition. Well, Your Honor, the facts that are in dispute here are material. So, if there's a question about immateriality, that's a different question than what's raised. Well, what if we disagree with you? What if we, like Judge Ebell says, we look at it and we say, to the extent there's any dispute here, it's not material. The evidence, there is no dispute. This guy was a minister. Well, Your Honor, I think to do that, the court would have to go through, pick through the record, make decisions. The court would have to weigh the various issues of fact to decide whether the schools putting something in a contract or in a handbook actually determined what Mr. Tucker did or what Mr. Tucker said. No, no, no. I think we could accept what this is. I think when you read or leave you, particularly, but Hosanna Tabor as well, it is a factual question and it is what happened on the ground, not labels. So, I don't think we would be overly hung up on the labels of being a minister or a chaplain or any of that stuff. I think we would look at what happened on the ground. But what happened on the ground as admitted by Mr. Tucker is that his job included counseling on faith and viewing history in the context of Christian faith. And when you look at the facts of Our Lady of Guadalupe, that pretty much was sufficient to qualify for ministerial exception. No, Your Honor. I disagree that under Our Lady of Guadalupe or Hosanna Tabor that would be sufficient to qualify for the ministerial exception, especially because if you look at those facts, they largely come from Mr. Tucker's handbook. Do you agree with this? And he said, yes, I agree with it. But that doesn't get to what he actually did on the ground. Now, under qualified immunity, in some instances, the courts can have jurisdiction when the appellant accepts the facts as they are presented by the appellee. That's not the case here. So, this court would have to go through and actually decide. So, that would, under Johnson v. Jones- You're giving us a useful caution. The caution means to read very carefully what he admitted to. And admitting that this is the policy of the church isn't an admission. You're warning us on that. So, we will read it with that view in mind, but look at only what facts, not titles, not the faith Bible policies, but what he actually did. And looking at that then, we have to decide if, notwithstanding the fact that this court said there was a dispute, if we feel that there was enough facts that he admitted to or didn't challenge that would qualify under Our Lady of Guadalupe, then we could still take jurisdiction. Would you agree with that? If the court were to actually take, were to parse the facts carefully, go through the record, and actually decide or view the facts and favorable to Mr. Tucker, then could the court decide? I think that, yes, the court could take jurisdiction only in that very, very limited circumstance. That's very constraining and a very tight rule, but obviously we want tight rules for interlocutory appeals. So, thank you. You're over your time, but at least you fully and quite carefully answered my question and I appreciate it. Thank you. Thank you. I do have one thought. As Judge Abell said, you are way over your time, but it's helpful. So, but I have a follow-up to Judge Abell's question. It's a hypothetical. Let's say the district court said in its order that the facts, the evidence viewed in the light most favorable to Mr. Tucker would allow a fact finder to conclude that Mr. Tucker organized religiously oriented discussion groups and provided spiritual guidance and counseling. However, these facts would not satisfy the ministerial exception. Would we have, assuming that you know, that the qualified, that the collateral order doctrine would otherwise apply, would we be able to determine as an abstract matter of law whether those two facts would satisfy the ministerial exception in contradistinction to what the district court had said? No, your honor. I don't believe so because what Morris C. Barrow and Hosanna Taybor say is that you have to look at all of the facts and you have to weigh all of the facts to decide what was done on the ground. Now, I do want to say this again, and in response to what Judge Abell just mentioned, this is a hypothetical because the court to even get to that point would first have to kick 20 years of case law to the curb and decide that there are an entirely new category of collateral order appeals that are appropriate. And so I don't conceive, Judge Abell, that yes, you can do it in this instance. I'm saying that if the court were to ignore the other two prongs of Cohen, as described in our brief, and the history of this court, then yes, maybe hypothetically that could be the case. But Judge Vacarac, that question proves why this is not a collateral order. This is a merits question, the question of what did the employee do, what actually happened on the ground. And that's enough to show that there cannot be appellate jurisdiction here. All right. Thank you. Judge Abell, did you have any additional questions? No, I do appreciate the argument, though. What a hard and an interesting matter. Thank you. Judge Vacu, did you have anything? No. Okay. I did give the appellant an additional minute. Thank you, Judge Vacarac. Thank you, Your Honors. Just a couple quick points. First, virtually all the facts you need are in the appellate's testimony at 373 and 374 on Volume 1 of the appendix. That's where he admits that he taught in the Bible department, he taught a Christian leadership class from a Christian perspective, that he held himself out to students as their chaplain, and most importantly, as this court has honed in on, he performed the duties of the chaplain. Regardless of the title, he did the duties, which is he was working for their spiritual well-being, he was looking out for their spiritual growth, he was planning their chapel services, and he testified he did this for about 20 hours a week. That is many, many more hours than any of the Hosanna Tabor or Our Lady of Guadalupe cases, a substantially easier case. All the stuff you've said relate to his titles and job descriptions, not what he, in fact, did. Other than this ambiguous statement, I did the duties of the chaplain, but his position on duties of the chaplain were simply to let the students handle the religious part of it, and I'm just going to be a facilitator, and the talk I'm wanting to give that's so controversial, that wasn't on faith issues at all. I mean, that wasn't a faith ideology, it was on a social and policy issue, so I'm troubled by that, but go ahead. Your Honor, thank you. Just two things. One, actually, if you look at page 373 of the appendix, he was specifically asked after he said that he was holding himself out as a chaplain, as being responsible for the students' well-being, and handling their spiritual growth, he was asked, and is that indeed what you were doing? And he said, yes. So he testified under oath that the thing that he told the students he was doing was, in fact, what he was doing, in addition to all the other things. Also, on page 163 of the appendix, you'll see that he says, in talking to the entire school, including parents, he was And he repeatedly admonished the entirety of the school about New Testament beliefs and scriptural teachings on that specific issue. To Judge McHugh's question earlier regarding timing, I'll just point to Hosanna Tabor, where the teacher there had finished her ministerial duties six months before the termination occurred. And finally, Your Honors, just note that the two interests at stake here are the interests represented by the church's interest in avoiding interference in its internal affairs, but also this court's independent and structural interest in avoiding interference in religious matters. And that's why in Bryce, in Skazipchak, and in Weaver, this court recognized that it's well-established that the very process of inquiry can create a violation of the religion clauses. And they entitled that as the anti-entanglement rule to prevent this kind of thing from occurring. For that reason, oh, sorry, Your Honor. Yeah, with respect to that, I mean, there really isn't any reason when you're dealing with an employment action that you couldn't go all the way through the case, and then if you win, get relief that is beneficial to the church. I mean, it's not like where in the qualified immunity area, the very process interferes with the functioning of our police officers are in depositions and trial all the time, and because nobody wants to do the job for fear of being sued, right? It's a very different situation. Respectfully, Your Honor, I think that's exactly why the right applies here. So if you look at Bryce in footnote one, this court said it's necessary to resolve church autonomy defenses early in the litigation to avoid excessive entanglement in church matters, because that is part of the injury. But Bryce isn't in a locatory appeal. They're not saying do it before you have an article three jurisdiction. Absolutely, Your Honor. I'm just saying a component of the right is to avoid entanglement, not just to avoid liability, but to avoid entanglement. And that's also what this court said in Skazipchak, where it said, quote, the coercive effect of merits discovery would produce, quote, the very opposite of that separation of church and state contemplated by the First Amendment principles are what protect not only against liability, but also against the entanglement that comes with trial and litigation. That's the Rayburn case. That's a Catholic University of America case. There are cases across the country. At least four other circuits, in addition to this court's own holdings, have recognized the harm to the religion clauses is not just in the liability finding. It's in the entanglement process of merits adjudication. But again, those cases are the Seventh Circuit and Fifth Circuit cases are interlocutory appeal cases. The other cases are just deciding this more narrow issue, what you and I have been talking about regarding the scope of the right. Is this right one that protects against trial and merits discovery? And I'm saying this court's rulings and also the rulings from other courts say that it is. Thank you, Your Honors. All right. Thank you. This matter will be submitted. I have a similar comment that I had after the first argument. The briefs and the advocacy today were absolutely excellent for both sides. It's a very difficult and important issue, as all of our cases are. And we caused you both to go quite over time because the advocacy was so helpful. So thank you to both of you. And this matter will be submitted.